# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:21-cv-00357-MR
# [CRIMINAL CASE NO. 1:00-cr-00069-MR-3]

| | |
|---|---|
| GEORGE MCBRIDE, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on Petitioner's Petition for Relief Under 28 U.S.C. § 2241 [CV Doc. 1][1] and the Government's Motion to Dismiss [CV Doc. 4]. Petitioner is represented by Joshua Carpenter of the Federal Defenders of Western North Carolina.

## I. BACKGROUND

During 1999 and 2000, the Petitioner George McBride ("Petitioner") and Amos Scott, both of whom lived in California, delivered multiple-kilogram quantities of cocaine to Robert Rutherford in Asheville, North Carolina,

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 1:21-cv-00357-MR, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 1:00-cr-00069-MR-3.

receiving between $22,000 and $26,000 per kilogram. [CR Doc. 104-1 at ¶¶ 7-9: Presentence Report (PSR)]. Petitioner and Scott traveled to Asheville, carrying the cocaine in plastic bags wrapped in black tape and secured to the top of gas tanks in rental cars, often transporting between two and three kilograms of cocaine at a time. [Id. at ¶ 7]. At least 70 kilograms of cocaine were reasonably foreseeable to Petitioner. [Id. at ¶ 9].

A federal grand jury indicted Petitioner and charged him with conspiracy to possess with intent to distribute at least 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 846, and 851. [CR Doc. 3: Indictment]. The Government filed an Information under 21 U.S.C. § 851, notifying Petitioner and this Court that it intended to seek an enhanced penalty because Petitioner had previously been convicted of a felony drug offense in California. [CR Doc. 5: § 851 Notice]. A jury convicted Petitioner of the conspiracy offense, finding that the offense involved at least 5 kilograms of cocaine. [CR Doc. 79: Jury Verdict].

This Court's probation office submitted a presentence report in preparation for sentencing. [CR Doc. 104-1]. Based on Petitioner's prior convictions for involuntary manslaughter and discharge of a firearm with

2

gross negligence, both in California,[2] the probation officer determined that Petitioner was a career offender within the meaning of U.S.S.G. § 4B1.1.[3] [Id. at ¶ 23; see id. at ¶¶ 29-30]. The probation officer found that Petitioner

---

[2] California involuntary manslaughter is – and was at the relevant time – defined as "the unlawful killing of a human being without malice … in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." Cal. Penal Code § 192(b).

[3] Petitioner was sentenced under the then mandatory, pre-Booker 2000 Guidelines Manual. Section 4B1.1 provided, "a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1 (2000).

Section 4B1.2(a) defined a "crime of violence" as "any offense under federal or state law, punishable by imprisonment exceeding one year, that –

   (1)   has an element the use, attempted use, or threatened use of physical force against the person of another, or

   (2)   is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*."

U.S.S.G. § 4B1.2(a) (2000) (emphasis added). The italicized language was termed the "residual clause" of this provision.

Application note 1 to the commentary to § 4B1.2(a) provided that, "'*[c]rime of violence' includes* murder, *manslaughter*, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as 'crimes of violence' if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2, cmt. 1 (2000) (emphasis added).

faced a statutory mandatory minimum sentence of twenty years and a maximum of life and, based on Petitioner's career offender status, that the Sentencing Guidelines (the "guidelines") called for a sentence of between 360 months and life in prison.[4] [Id. at ¶¶ 46, 47]. In August of 2001, this Court sentenced McBride to life in prison.[5] [CR Doc. 112 at 2: Judgment].

Petitioner appealed, arguing that the Court improperly sentenced him as a career offender because his prior conviction for discharging a firearm was not punishable by more than a year of imprisonment. United States v. McBride, 42 Fed. App'x 629 (4th Cir. 2002). The Fourth Circuit affirmed Petitioner's conviction and sentence, holding that "[t]he district court properly determined that McBride has two prior felony convictions for crimes of violence." Id. at 630.

---

[4] At sentencing, the Court sustained Petitioner's objection to the PSR's finding that Petitioner was responsible for at least 70 kilograms of cocaine, concluding that, after Apprendi v. New Jersey, 530 U.S. 466 (2000), the base offense level based on drug quantity was 32, which correlated to a drug quantity of at least 5 kilograms but less than 15 kilograms of cocaine. [CR Doc. 191 at 4: Sentencing Tr.; U.S.S.G. § 2D1.1 (2000)]. With a total offense level of 32 and a criminal history category of VI, [see CR Doc. 104-1 at ¶ 34], the mandatory guidelines sentencing range without the career offender enhancement would have been 210 to 262 months' imprisonment. Because the statutory minimum sentence was 240 months, 21 U.S.C. §§ 841(b)(1)(A) and 851, however, the guidelines range would have been 240 to 262 months without the career offender enhancement. U.S.S.G. § 5G1.1(c)(2) (2000).

[5] On March 21, 2011, this matter was reassigned to the undersigned on the retirement of United States District Judge Lacy Thornburg.

4

In 2003, Petitioner filed his first motion to vacate, raising various challenges to his conviction and sentence. [CR Doc. 134]. The Court denied and dismissed it on the merits. [CR Doc. 136]. The Fourth Circuit denied Petitioner's request for a certificate of appealability and dismissed his appeal. United States v. McBride, 101 Fed. App'x 921 (4th Cir. 2004).

In 2008, the Supreme Court decided Begay v. United States, 553 U.S. 137 (2008), in which the Court held that the defendant's prior convictions for felony DUI did not satisfy the "violent felony" definition of the Armed Career Criminal Act (ACCA). The ACCA imposes a mandatory 15-year prison term on a felon who unlawfully possesses a firearm and who has three or more prior convictions for committing certain drug crimes or "a violent felony." 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as a crime punishable by more than one year's imprisonment that "(i) has an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another* ["Clause (ii)"]." 18 U.S.C. § 924(e)(2)(B) (emphasis added). In finding that DUI fell outside the scope of Clause (ii), the Court held that the listed examples should be read "as limiting the crimes that Clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk

posed, to the examples themselves." Begay, 553 U.S. at 143. The listed offenses, the Court noted, "typically involve purposeful, violent, and aggressive conduct" such that it makes it "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." Id. at 144-45 (internal quotation marks and citation omitted). The Supreme Court held, therefore, because "a prior record of DUI, a strict-liability crime, differs from a prior record of violent and aggressive crimes committed intentionally such as arson, burglary, extortion, or crimes involving the use of explosives," New Mexico's crime of DUI falls outside the scope of the ACCA's Clause (ii) "violent felony" definition. Id. at 148.

In 2011, Petitioner filed a motion for authorization to file a successive motion to vacate, which the Fourth Circuit denied. [CR Doc. 170]. In 2013, Petitioner filed another motion to vacate, seeking relief under Descamps v. United States, 570 U.S. 254 (2013).[6] [CR Doc. 174]. Petitioner argued, under United States v. Peterson, 629 F.3d 432 (4th Cir. 2011), that he was improperly sentenced as a career offender.[7] [Id. at 3-4]. The Court dismissed

---

[6] In Descamps, the Supreme Court held that courts may not apply the modified categorical approach to sentencing under the ACCA when the crime for which the defendant had been convicted has a single, indivisible set of elements. 570 U.S. at 277-78.

[7] In Peterson, the Fourth Circuit held, in part, that North Carolina involuntary manslaughter does not categorically qualify as "manslaughter," "as that term is used in the U.S.S.G. § 4B1.2(a) cmt. 1 to enhance sentences under § 4B1.1(a)." 629 F.3d at 438. North Carolina involuntary manslaughter is "the unlawful killing of a human being without malice,

6

Petitioner's second motion to vacate for failure to obtain authorization to file a successive motion. [CR Doc. 175]. The Fourth Circuit denied a certificate of appealability and dismissed Petitioner's appeal. United States v. McBride, 570 Fed. App'x 286, 287 (4th Cir. 2014).

In 2016, Petitioner filed an authorized successive motion to vacate, alleging that his career offender predicates no longer qualified as crimes of violence under Johnson v. United States, 135 S.Ct. 2551 (2015), because Johnson invalidated the residual clause of the Armed Career Criminal statute. See McBride v. United States, No. 1:16-cv-201, 2018 WL 5924504, at *1 (W.D.N.C. Nov. 13, 2018). The Court dismissed Petitioner's motion after he conceded it was untimely. Id. at *2. The Fourth Circuit denied a certificate of appealability and dismissed the appeal, holding that "McBride did not assert a right newly recognized by the Supreme Court." United States v. McBride, 2021 WL 5985531, at *1 (4th Cir. Dec. 17, 2021).

In 2021, Petitioner filed a motion for compassionate release, arguing that he had serious medical conditions, that under current law he would no

---

without premeditation and deliberation, and without intention to kill or inflict serious bodily injury." State v. Powell, 446 S.E.2d 26, 29 (N.C. 1994) (citation omitted). It is also defined as "the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." Id. (citation omitted).

7

Case 1:21-cv-00357-MR   Document 9   Filed 06/13/23   Page 7 of 19

longer qualify as a career offender,[8] and that the First Step Act lowered the applicable guidelines range for his offense. [CR Doc. 218]. The Court denied Petitioner's motion, holding in part that his conduct involved a "prodigious amount of cocaine" and that, even without the career offender enhancement, he would still be subject to a statutory sentencing range of 20 years to life imprisonment. [CR Doc. 230 at 11].

Petitioner now brings the instant § 2241 petition, which he filed in December 2021. [CV Doc. 1]. He seeks to challenge his career offender enhancement under the savings clause in 28 U.S.C. § 2255(e). [Id. at 5 (citing United States v. Wheeler, 886 F.3d 433 (4th Cir. 2018), cert. denied, 139 S.Ct. 1318 (2019))]. He argues that, at the time of sentencing, United States v. Payton, 28 F.3d 17 (4th Cir. 1994), established that an involuntary manslaughter conviction satisfied U.S.S.G. § 4B1.2(a)(2)'s "residual clause," thus triggering the career offender enhancement, but that "[t]he Supreme Court's subsequent, statutory-interpretation decision in Begay v. United States, 553 U.S. 137 (2008), narrowed the scope of the provision retroactively, and the Fourth Circuit recognized after Begay that an identical

---

[8] Petitioner argued that, if he were sentenced today for the offense of conspiracy to possess with intent to distribute cocaine, he would not be designated a career offender in light of United States v. Norman, 935 F.3d 232, 237-39 (4th Cir. 2019) (holding that the offense of conspiracy with intent to distribute a controlled substance is not a "controlled substance offense" within the meaning of the career offender guideline).

involuntary manslaughter conviction did not satisfy the § 4B1.2 definition." [CV Doc. 1 at 3, 5 (citing Peterson, 629 F.3d at 438)]. Petitioner further claims that Begay applies retroactively on collateral review and that Petitioner's sentence "now presents an error sufficiently grave to be deemed a fundamental defect." [CV Doc. 1 at 13 (quoting Wheeler, 886 F.3d at 429)].

The Government moved to dismiss Petitioner's habeas petition, arguing that this Court lacks jurisdiction because Petitioner cannot meet the savings clause requirements.[9] [CV Doc. 4]. Petitioner responded [CV Doc. 6] and the Government replied [CV Doc. 8].

The matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

---

[9] Although Petitioner is currently confined at the Lompac USP in Lompac, California, the Government waives any objection to proper venue here. [See CV Doc. 1 at 2].

## III. DISCUSSION

Section 2255 is generally the proper means of collaterally attacking the validity of a federal conviction or sentence. In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997) (en banc). A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

By contrast, § 2241 is a means of attacking the way a sentence is executed. Tolliver v. Dobre, 211 F.3d 876, 877 (5th Cir. 2000). The Fourth Circuit recognized in In re Jones, 226 F.3d 328 (4th Cir. 2000), however, that where § 2255 is inadequate or ineffective to test the legal validity of a petitioner's conviction, the "savings clause" § 2255(e) permits a petitioner to seek relief under § 2241. 226 F.3d at 333. A § 2255 motion "is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision" or is procedurally barred from such a motion. Id. Rather, § 2255 is inadequate and ineffective to test the legality of a sentence when:

> (1) at the time of sentencing, settled law of [the Fourth Circuit] or the Supreme Court established the legality of the sentence;
>
> (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review;
>
> (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and
>
> (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

Wheeler, 886 F.3d at 429 (4th Cir. 2018). These requirements are jurisdictional. That is, their satisfaction determines whether a petition for sentencing relief under § 2241 may be "entertained to begin with," not whether a petitioner is entitled to relief thereunder. See id. at 425, 434. If a petitioner challenges the validity of his detention in a § 2241 petition that does not meet the savings clause requirements, a district court must dismiss the unauthorized habeas petition for lack of jurisdiction.[10] Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010).

---

[10] The parties do not dispute that Petitioner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions and, therefore, satisfies Wheeler factor 3. [See CV Doc. 1 at 13, CV Doc. 4]. The Court agrees and needs not further address this issue.

The Court's inquiry begins with the first Wheeler factor. It requires a prisoner to show that "at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence." Wheeler, 886 F.3d at 429. On this issue, in the context of a savings clause challenge to a petitioner's conviction, the Fourth Circuit has held that, to pass through the savings clause, binding precedent at the time of conviction must have foreclosed the statutory interpretation a prisoner "later advances to challenge his conviction or sentence such that raising it earlier was or would have been futile." Marlowe v. Warden, FCI Hazelton, 6 F.4th 562, 571 (4th Cir. 2021). Precedent is "binding" if it is a published case from the applicable circuit court of appeals or Supreme Court. See id. at 572.

Moreover, "habeas proceedings are not the time to raise arguments a prisoner could have made, but did not, in the proceedings culminating his conviction. Principles of procedural default sharply limit a prisoner's ability to raise on collateral review claims not raised in his initial criminal proceeding or on direct appeal." Id. at 571 (citations omitted). These standards apply equally to a challenge to the legality of a sentence. See id. at 571.

Here, Petitioner contends that he satisfied the first Wheeler factor because the settled law at his sentencing, United States v. Payton, 28 F.3d 17 (4th Cir. 1994), established that an involuntary manslaughter conviction

qualified as a crime of violence under § 4B1.2. [CV Doc. 1 at 5]. Petitioner further contends that, in Payton, the Fourth Circuit explained that involuntary mansalughter qualified not only under the commentary's enumerated offense of "manslaughter" but also under § 4B1.2's residual clause as an offense that "by its nature, presented a serious potential risk of physical injury to another." [Id. (citing Payton, 28 F.3d at 19)]. Petitioner argues that, on this second point, the Fourth Circuit relied on United States v. Springfield, 829 F.2d 860 (9th Cir. 1987), in which the Ninth Circuit concluded that federal involuntary manslaughter satisfied § 924(c)'s residual clause because "involuntary manslaughter, which 'by its nature' involves the death of another person, is highly likely to be the result of violence." Id. at 863. Petitioner contends that, in Payton, "the Fourth Circuit specifically adopted Springfield's reasoning in interpreting § 4B1.2's similarly worded residual clause." [CV Doc. 1 (citing Payton, 28 F.3d at 19)].

The Government argues, on the other hand, that, "[a]lthough it was clear that involuntary manslaughter was an *enumerated* crime of violence under the career-offender guideline, … no settled law precluded [Petitioner's] assertion that involuntary manslaughter did not fall within the 'otherwise involves conduct' clause under that guideline because it did not involve conduct posing risk of a similar degree and kind to the enumerated offenses."

[CV Doc. 4 at 11 (emphasis in original)]. That is, the Government argues that the settled law did not preclude an argument consistent with Begay.

As an initial point, it is noted that the issue is whether binding precedent at the time of sentencing foreclosed an argument that *California* involuntary manslaughter was not a crime of violence under the career offender guidelines. Payton, on the other hand, addressed the South Carolina involuntary manslaughter statute.

Therein, the Fourth Circuit decided that South Carolina's statute, which requires a *mens rea* of recklessness,[11] is a crime of violence under § 4B1.2. The Fourth Circuit concluded, without further analysis, that enumeration of "manslaughter" in the Guidelines commentary encompassed both voluntary and involuntary manslaughter and, under Stinson v. United States, 508 U.S. 36 (1993), the commentary controlled. Payton, 28 F.3d at 19. Specifically, the Fourth Circuit did not decide (and was not asked to decide) whether a South Carolina conviction for involuntary manslaughter categorically qualified as "manslaughter" as used in § 4B1.2(a) cmt. 1 to enhance sentences under § 4B1.1(a). As such, Payton did not foreclose an argument

---

[11] Conviction for involuntary manslaughter in South Carolina requires a showing of "criminal negligence," which is defined as "the reckless disregard of the safety of others." S.C. Code. § 16-3-60.

that California involuntary manslaughter, which requires only lack of "due caution and circumspection … in the commission of a lawful act which might produce death," CA Penal Code § 192(b), categorically falls outside the definition of a crime of violence.[12]

Moreover, contrary to Petitioner's argument, the Fourth Circuit did not, in Payton, "specifically adopt" Springfield's reasoning "in interpreting § 4B1.2's similarly worded residual clause." Rather, after concluding that application note 2 of § 4B1.2 "includes both" involuntary and voluntary manslaughter, the Payton Court noted that the Ninth Circuit "is the only circuit to consider whether involuntary manslaughter is an offense that 'by its nature, involves a substantial risk that physical force may be used in the course of committing the offense.'" 28 F.3d at 19. The Court's holding in Payton did not purport to rely on Springfield. For that reason, Payton did not foreclose the argument that California involuntary manslaughter does not necessarily involve conduct "that [is] roughly similar, in kind as well as in degree of risk posed," to burglary, arson, extortion, or the use of explosives,

---

[12] In so finding, the Court notes that, in a 2006 unpublished decision, before Begay and Peterson, the Fourth Circuit, without distinguishing the respective *mens rea* requirements of North Carolina and South Carolina involuntary manslaughter, relied on Payton's holding that involuntary manslaughter is included in the commentary's enumerated offense of "manslaughter" to find that a defendant's North Carolina involuntary manslaughter conviction constituted a "crime of violence" under U.S.S.G. §§ 2K2.1(a)(2) and 4B1.2. United States v. Ensminger, 193 Fed. App'x 198, 199 (2006).

15

which involve purposeful, violent, and aggressive conduct. In sum, <u>Payton</u> established only that, for sentencing enhancing purposes, South Carolina involuntary manslaughter is a crime of violence as defined in § 4B1.2.

As such, binding precedent at the time of Petitioner's conviction did not foreclose an argument that California involuntary manslaughter did not categorically qualify as a crime of violence or that it did not involve purposeful, violent, and aggressive conduct presenting a "serious potential risk of physical injury to another" under the career offender residual clause. <u>See</u> <u>Marlowe</u>, 6 F.4th at 571. Because the first element of <u>Wheeler</u> is not satisfied, the Court lacks jurisdiction to entertain Petitioner's § 2241 petition on the merits. <u>Wheeler</u>, 886 F.3d at 425.

Because the decisions of the Fourth Circuit and the Supreme Court since Petitioner's judgment that may affect Petitioner's sentence did not overturn any then-applicable binding precedent, Petitioner is also unable to meet the second <u>Wheeler</u> element. Moreover, even if Petitioner's argument regarding <u>Payton</u> were correct, the substantive change Petitioner argues would have been effected by Amendment 798, which removed manslaughter from the subject enumeration. That Amendment, however, is expressly NOT retroactive. <u>See</u> U.S.S.G. § 1B1.10. For this additional reason, the second <u>Wheeler</u> element is not met.

Even if Petitioner were able to overcome the obstacle of the first and second Wheeler elements, he would fail to overcome the fourth element. Even in situations where the career offender enhancement may not technically apply, it can remain instructive as to the appropriate sentence when applying the § 3553(a) factors. See Beckles v. United States, 580 U.S. 256, 267, 137 S.Ct. 886, 895 (2017); United States v. Hardaway, No. 20-4016, 2023 WL 2770949, at *2 (4th Cir. Apr. 4, 2023). Petitioner makes a technical categorical argument as to why his involuntary manslaughter conviction is not a career offender predicate. The PSR discloses, however, that when Petitioner committed that offense, he had previously been convicted of a felony offense, [CR Doc. 104-1 at ¶ 28], and committed the killing with a firearm. [Id. at ¶ 29]. As such, he committed the offense while a felon in possession, which would further violate 18 U.S.C. § 922(g)(1). In fact, Petitioner committed three criminal offenses with a firearm after his initial felony conviction, two of which involved the discharge of the firearm, one involved a killing, and another a threat to kill. Even if this would not today serve as a career offender predicate, all these circumstances taken together constitute an "imperfect career offender" designation, likely dictating a substantial upward variance sentence. Just because Petitioner presents an argument that raises the *possibility* that he might receive a slightly lower
17
Case 1:21-cv-00357-MR   Document 9   Filed 06/13/23   Page 17 of 19

sentence if sentenced today does not "present[ ] an error sufficiently grave to be deemed a fundamental defect."[13]

## IV. CONCLUSION

Having concluded that the Petitioner fails to meet three of the four Wheeler factors, the Court lacks jurisdiction to consider Petitioner's petition for relief under 28 U.S.C. § 2241. The Court, therefore, will deny and dismiss Petitioner's § 2241 petition and grant the Government's motion to dismiss.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of

---

[13] That is, as noted, Petitioner had a statutory mandatory minimum sentence of 240 months and an "imperfect" assisting guideline range 360 months to life. Moreover, Petitioner's co-Defendant, Amos Scott, is currently serving a sentence of life. [Case No. 1:00-cr-00069-MR-5, Doc. 111: Judgment]. As such, many factors indicate that any resentencing would not yield a substantially lower sentence.

18

appealability.  See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

### ORDER

**IT IS THEREFORE ORDERED** that Petitioner's Petition for Relief Under 28 U.S.C. § 2241 [Doc. 1] is **DENIED** and **DISMISSED** and the Government's Motion to Dismiss [Doc. 4] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Martin Reidinger
Chief United States District Judge

19

Case 1:21-cv-00357-MR   Document 9   Filed 06/13/23   Page 19 of 19